Barnard, P. J.
We deem the exceptions taken upon the trial of not sufficient weight to reverse the decree.
One of the proponents, Mr. Lanahan, was permitted to testify to declarations made by the deceased in respect to her son Edward Boury. It subsequently appeared that these declarations were not made while the will was under consideration, but had been made in reference to other business when the deceased and the witness sustained the relation of attorney and client. The evidence stricken out is returned, and there is nothing in it beyond what is preserved in the *810 case. . The witness was permitted to state that for many years the deceased constantly reported that the troubles of • her son Edward had caused her family to be involved in financial and domestic affairs. The rejected evidence goes no further than this, except that specific complaints are made. The attorney who drew the will could properly testify to the facts, and the declarations of the deceased in respect to the execution and accompanying it, are admissible, and are not within the principle of disclosures between attorney and client. The evidence of the witness Johnson was not within the rule excluding communications between physician and patient. Nothing he said was acquired for the purpose of the employment. It was merely af amily physician testifying to family events, in no way connected with physicial complaints. The admission of the testimony of Edward Boury was objected to in many parts of his narrative. Some were o'f instances of events which were not of personal transaction with the deceased, and some are admissible, because he was the principal point of assault in the case, and he had a right of reply when the proponents of the old will and the contestants of the new one had given testimony in reference to the transaction as to which he was permitted to give in reply his version of the facts.
The letters from Lanahan to Mrs. Boury were properly admitted. Lanahan had testified to the letter from Mrs. Boury to him, and these letters to her were proper, to give the court the entire case, so far as it depended upon the correspondence. The answer of the witness Gill was prop - erly stricken out. It was not responsive to the question, and he was permitted to make a proper answer, which was, whether the subject of the will was discussed before July 21, 1884. He had endeavored to insert in his answer matter not called for by the question. There is, therefore, nothing to call for a reversal for material errors in the admission or the rejection of evidence. Matter of Ross, 87 N. Y., 514. The decree must therefore be examined upon the merits and upon the entire body of the evidence given in support and in opposition to the will.
It appears from the will that the testatrix, at her decease, resided in Kings county. She had made a will in April, 1884, and had re-executed it in June, 1884.
On the 21st of July, 1884, she executed the will in question. She died on the 13th of April, 1885. The two papers are essentially different in plan and result, and still have a certain similarity. Edward Boury was her only son, and heir at law. There was a Miss Marie B. Mattingly, who had been brought up in testatrix’s family, 1 and was a daughter of an adopted daughter of the deceased. By the will first executed she had one-fifth of the estate.
By the last will she gets $6,000 a year for life. By the first will the son got the use of four-fifths of the estate, with the remainder to his four children equally. By the last will *811 he gets, after deducting $30,000 for the use of three of his four children and after paying an annuity of $300 a year to Cora Boury, one of the children, during life, the use of all the estate for life, with remainder to his children, excluding Cora Boury. The executor in the first will was Mr. Higgins, in the last will Edward A. Boury, the testatrix’s son. There is nothing in the testimony from whiqh it can be claimed that the testatrix was a person of unsound mind. The entire testimony shows her to have been a woman of strong mental power. _ Ho instance of incapacity, nothing incoherent or ■eccentric is shown. She was a self-possessed woman, with a firm will, to the time of her death. The case therefore is the case of a woman entirely competent to make a will, but it is alleged that she was unduly influenced by her son to make the last will. The ground of the claim is stated in the testimony of Thomas E. Ward, to the effect that on the next day after the last will was executed the testatrix said to him that “she had made a new will through the importunity of Mr. Boury.” * * She said he had been rude towards her; she undertook to bare her arm by putting up her sleeve to show h'ow hard he had taken her by the arm.
Q. In the endeavor to get her to change her will? A. Yes, sir.
The same general fact is testified to by Dr. Gill. I think an examination of the evidence disproves this testimony. In the first place, Miss Mattingly lived in the same house during the whole time covered by the evolution of the last will, and much violent language is given by her between mother and son, but no violence. In the second place, the last will was drawn under the direction of testatrix. It was read to her in the presence of three witnesses. She stated the reason for the change in that she had had a very long interval of estrangement from her son. That she trusted him at the point of death and that blood was thicker than water. She showed no fear, she stated no acts of violence, and changed the will after it was prepared to insure a fixed annuity to Miss Mattingly. The testatrix lived many months after this and made no change in the will, although she knew its contents and effect. In the third place, the testatrix subsequently made declarations inconsistent with the testimony tending to show a dissatisfaction with the will and with her son. She repeatedly stated her confidence in her son and an expectation that, he would transact her business after the date of the disputed will. The occasions were different, and in none of them could it be inferred that the testatrix did not speak her mind freely and without domination or fear. The part taken by the son in conveying the instructions for the will is of no importance in view of the fact that the testatrix adopted the instructions as her own and- approved the will after it was prepared and executed it. The case is not one where the inference against one who writes himself heir is called for.
*812 He was the heir at law and the only one, and the will was made by a capable testatrix who understood it.
Ho doubt the son solicited the change, but there is no reason to believe that he unduly influenced his mother to change the will. Matter of Martin, 98 N. Y., 193.
The decree of the surrogate should therefore be affirmed, with costs.
Pratt, J.. concurs; Dykman, J., not sitting.